## Case No. 12,271.

SALTONSTALL et ux. v. STOCKTON et al.

[Taney, 11.] [1]

Circuit Court, D. Maryland.   Nov. Term, 1838. [2]

CARRIERS—INJURY TO PASSENGERS—STAGE-COACH —MISCONDUCT OF DRIVER—EX DELICTO— PROVINCE OF JURY.

1. Where plaintiff sued the proprietors of a line of stage-coaches for damages sustained by his wife. through the upsetting of one of their coaches: *held*. that the plaintiff having proved that the carriage was upset and his wife injured. it was then incumbent on the defendants to show that proper skill and care were exercised on their part. and that the injury was not produced by the negligence of their driver.

2. Every one that undertakes the business of a carrier of persons is bound to know all the hazards to which it is exposed. and that by the exercise of reasonable skill and proper care, the traveller can be carried in safety; when, therefore, a passenger is injured, the presumption is that it has been occasioned by negligence.

3. Justice, as well as the principles of evidence adopted in analogous cases, require. that any disaster by which a passenger suffers, should be primâ facie evidence of negligence in the carrier, and make it necessary for him, in order to exonerate himself from damages, to show the contrary.

4. Questions as to negligence. and reasonable skill and care, in every description of business. are necessarily questions of fact, and belong to the jury; the court can do nothing more than give the rule by which they are to be tried.

5. Where the plaintiff imputes the accident to the misconduct of the driver, it is incumbent upon the defendant to prove that the driver possessed and exercised that degree of skill which competent drivers, employed in like business. usually possess, and ought to possess, in order to convey the passenger with safety and comfort. and that he exercised, at the time of the accident. the utmost prudence and caution.

6. The law requires of him a high degree of caution and prudence. and the least negligence on his part, which produces bodily injury to the passenger. will render the carrier liable. Unless the jury find that such skill and such care were used, the plaintiff is entitled to recover; provided, nothing was done by the plaintiff or his wife. which absolves the defendant from this liability.

7. Injuries received in cases of this description are not violations of a contract between the parties, but are breaches of the duty imposed by law on the carrier. They are torts. But the plaintiff may waive the tort and sue in assumpsit.

[Cited in Pouilin v. Canadian Pac. Ry. Co.. 47 Fed. 860.]

[1] [Reported by James Mason Campbell, Esq., and here reprinted by permission.]
[2] [Affirmed in 13 Pet. (38 U. S.) 181.]

8. Those who undertake the business of carrying persons are regarded by law as if they were in the public service, and the carrier cannot refuse to take any one of good character, who conducts himself properly and pays the usual fare—provided he have room for him—and if he refuse, he is liable to an action.

9. Neglect of duty on the part of a carrier of persons, is a tort; and if an individual be injured by it, his rights, and the liability of the defendant, must depend upon the principles which govern in cases of tort, where a breach of a legal duty has been committed, and an individual suffers from it.

10. Although a man commit an unlawful act by digging a ditch or placing any other obstruction in a public highway, or by driving at a dangerous speed through a crowded street, and an individual be injured by it, the injured party cannot maintain an action, if it appear that he heedlessly and negligently came within reach of the danger, and did not use reasonable care to avoid it.

11. But if a man unlawfully place another in a situation which compels him to undergo one of two hazards, and force him to choose, upon the instant, between them, he necessarily gives him the right of selection, and must be responsible for the consequences, although it may turn out that the most fortunate alternative was not adopted.

[Cited in The Sunnyside, Case No. 13,620.]

12. If there be the slightest evidence conducing to prove the fact, the question must be left to the jury; and even if there be some doubt whether there be any competent and legal evidence of the fact, the court would be unwilling to withdraw the question altogether from the jury, because it is to that tribunal that the law commits the decision upon controverted facts; and the court have no right to suppose that the jury would find a verdict upon slight and insufficient testimony, or without any testimony to warrant it.

[This was an action by Saltonstall against Stockton & Stokes to recover damages for personal injury sustained by plaintiff's wife.]

R. Johnson and J. V. L. McMahon, for plaintiff, cited 2 Camp. 80; Story, Bailm. § 601; 11 Pick. 106; 12 Pick. 477; 1 Camp. 179; 2 E. C. L. 482; 5 Car. & P. 409, 410; 23 E. C. L. 331; 2 Esp. 533; 3 Eng. C. L. 233.

Wm. Schley and John Glenn, for defendants, cited 1 Starkie, 493; 2 Taunt. 314; 11 East, 61; 2 Starkie, 377; 5 Car. & P. 375, 421; 6 Car. & P. 23; 8 Car. & P. 104. 373; 6 Cow. 191; 2 Pick. 621; 12 Pick. 477; 1 Camp. 169.

TANEY, Circuit Justice. This is an action on the case brought by Saltonstall against the defendants, to recover damages for an injury sustained by his wife, by the upsetting of a stage-coach, of which the defendants were the owners. This suit is brought in the name of Saltonstall alone, but there is a written agreement filed, by which any evidence may be offered that would be admissible in an action by the plaintiff and his wife, or the plaintiff alone, and any damages recovered that could be recovered in either form of action. It appears, that the defendants were the owners of a line of stages running from Baltimore to Wheeling, in which the plaintiff and his wife were passengers, in December, 1835; that the coach was upset, between Hancock and Cumberland, and the plaintiff's wife severely injured and rendered a cripple for life.

On the part of the plaintiff, evidence was offered to show that the driver was drunk; that some time before the disaster happened, his conduct gave just cause of alarm to the passengers; that Mrs. Saltonstall had several times asked her husband to get on the box and take the reins; that at the top of a hill, where there was a gentle slope in the direction they were going, and the road perfectly safe, and the horses in a walk, they suddenly turned out from the road and wheeled round, until their heads were in the opposite direction to that in which they had been going; that as soon as it was discovered by the passengers, that the horses had turned out of the road, Saltonstall opened the door at the side of the carriage and sprang out, apparently to stop them; that his wife immediately followed, but fell as she touched the ground, and before she could recover, the carriage overturned and fell upon her; that the horses were docile and manageable, and that the carriage was upset by the misconduct of the driver in turning the horses short round, or suffering them to turn from his inability to manage them.

The defendant offered evidence to show that the driver was not drunk; that there was smooth ice in the road, and that his horses were slipping on it, and that he turned out as the best means of safety; that the stage would not have fallen over if the plaintiff and his wife had remained in it; but that standing, as it did, on a 'declivity, their weight thrown on the lower side, and the impulse given by springing from it caused it to fall over on that side; (it was suggested by one of the witnesses that the driver was overcome by extreme cold, and physically unable to manage his horses;) that there were four passengers besides the plaintiff and his wife; that these four remained in the coach, and that none of them were materially injured; and that the plaintiff and his wife would probably have suffered little or no injury, if they had remained in the carriage.

Many prayers have been offered to the court upon this testimony, praying hypothetical instructions to the jury. We do not mean to express a separate opinion on each of them, because in a case like this, the prayers necessarily contain an hypothetical assumption of many facts to be found by the jury, some of which are not disputed, and others strongly controverted, and it is difficult for jurors who are not familiar with this mode of proceeding, to understand clearly the instructions of the court when given in this complicated form. We therefore reject all the instructions prayed for, and proceed to give the directions of the court to the jury,

upon the law of the case, in that form in which we suppose the jury will be best able to comprehend them. It is proper, however, in the first place, to state the principles on which the opinion of the court is founded.

It is admitted on all hands that this action cannot be maintained, unless the injury complained of was caused by the want of skill or care on the part of the defendants or their agents; but after the plaintiff has proved that the carriage was upset and his wife injured, it is incumbent upon the defendants to show that proper skill and care were exercised on their part, and that the injury was not produced by the negligence of their driver. It is true, that the cases in the books do not altogether agree on this point, nor does it appear to be of much importance in the case before us; but as the point has been made, the court must decide it.

It is a general rule of evidence, that the burden of proof lies upon the party who has peculiar means of knowledge not within the reach of his adversary; and the exception to this rule is the class of cases, where the existence of the fact in controversy would make the party who is presumed to have the knowledge liable to a criminal proceeding; in such cases, the law, presuming his innocence, does not require him to prove it. The exception, of course, does not apply to the case before the court, and it clearly falls within the general rule; for the passengers, for the most part, are unacquainted with the condition of the carriage, the harness, and the horses; have no knowledge of the state of the road, and no skill in driving a coach; upon all of these points, they must seek information from the defendants or their agents, and without their permission, the injured party cannot even have access to the way-bill, to learn the names of his fellow-passengers, to whom he is often an entire stranger. The owners, on the contrary, have a perfect knowledge of every material circumstance, and if a disaster occurs, and was not produced by negligence or want of skill, it is always in their power to prove it. It is not a negative that they are required to prove, but an affirmative proposition, that is to say, that proper skill and care were employed; and to show how the accident happened without any fault on their part.

Moreover, every one who undertakes the business of a carrier of persons is bound to know all the hazards to which it is exposed, and that by the exercise of reasonable skill and proper care, the traveller can be carried in safety. When, therefore, a passenger is injured, the presumption is, that it has been occasioned by negligence; and this presumption is the necessary consequence of the admission which the carrier makes, by undertaking the business and inviting the public to use the conveyance he provides; if the rule were otherwise, the right of action which the law gives would in most instances be rendered nugatory by the rule of evidence. How,

for example, could a passenger in a steamboat or railroad car, point out the imperfection of the complicated machinery by which it is propelled: yet the same rule of evidence as to negligence must prevail in relation to every carrier of passengers, whether by stagecoaches conducted by horse power, or in steamboats or railroad cars driven by steam. Justice, as well as the principles of evidence adopted in analogous cases, require that any disaster by which a passenger suffers should be primâ facie evidence of negligence in the carrier, and make it necessary for him, in order to exonerate himself from damages, to show the contrary.

The burden of proof, therefore, being upon the defendants, the question arises, what is the degree of skill and care which they are bound to exercise? The counsel on both sides have asked the court for instructions to the jury, which imply that it is the province of the court to decide, as a matter of law, that certain acts amount to negligence. Questions as to negligence and reasonable skill and care in every description of business, are necessarily questions of fact, and belong to the jury; and the court can do nothing more than give the rule by which they are to be tried. In this case, the plaintiff does not allege that there was any defect in the carriage, or harness, or horses; he imputes the accident altogether to the misconduct of the driver. It is incumbent, therefore, upon the defendant to prove that the driver possessed and exercised that degree of skill which competent drivers, in like business, usually possess, and ought to possess, in order to convey the passengers with safety and comfort; and that he exercised, at the time of the accident, the utmost prudence and caution; for in performing a duty of this kind, where the lives and health of so many citizens are intrusted to his care, the law requires of him a high degree of caution and prudence, and the least negligence on his part, which produces bodily injury to the passenger, will render the carrier liable. Unless, therefore, the jury find that such skill and such care were used, the plaintiff is entitled to recover, provided nothing was done by the plaintiff, or his wife, which absolves the defendants from their liability.

And this brings us to the next point in the case, upon which the chief stress of the argument has been laid, and upon which it seems to be supposed that the issue of the case will mainly depend.

The counsel for the defendants insist that the severe injury which the plaintiff's wife received, was caused by her leaping from the stage; that if she had not done so, the carriage would not have upset; and even if it had been overturned, she would have been less injured: that although the driver may have been guilty of negligence, yet, as she contributed to produce the injury she suffered, by her own act, the plaintiff is not entitled to recover, because her own imprudence was the proximate cause of the injury, and not the

misconduct of the driver. And in support of this position, they have referred the court to the cases where it has been held that, if a man drive heedlessly and negligently on the wrong side of the road; or at a dangerous speed, in a public street; or place an unlawful obstruction in a highway; and an individual is injured in consequence of any of these unlawful acts, he is not entitled to recover, if he contributed, in any degree, to produce the injury, by his own improvidence or want of care.

On the other hand, the plaintiff contends that the present case is distinguishable from those relied on, inasmuch as the action, although an action on the case, is yet founded on a contract between the parties, and the rights and duties of each are dependent on the stipulations in the agreement; that the defendants by their contract undertook and promised that the plaintiff and his wife should be carried with proper skill and care; that the contract was broken by the misconduct of the driver, and the plaintiff therefore is entitled to recover, even although they may have contributed to increase the danger and add to the injury by leaping from the stage.

The court think the case before them is distinguishable from the cases relied on by the counsel for the defendants; but we are not prepared to say that the distinction taken by the plaintiff can be maintained, and doubt whether his case would be strengthened by placing it on that footing.

It is not suggested that there was any special agreement between the parties; but the plaintiff refers to the contract implied by law. Now this implied contract of the defendants must have reasonable limitations, and there must be correlative obligations implied on the part of the passenger. The undertaking of the carrier that the passenger shall not suffer from negligence, would seem naturally to be confined to the time that the passenger remains in the vehicle in which he is to be carried, and when he is entering or departing from it with the assent of the carrier, and according to the usage on the route; and corresponding stipulations on the part of the passenger for his conduct must also be implied. Upon such an agreement, it might, perhaps, be held that the plaintiff's wife committed a breach of the agreement, by leaving the carriage in an imprudent manner, and at a time when it was dangerous to do so; and thereby made her election to rely for safety on her own exertions and not on the contract of the defendants. The negligence of the defendants would give no right of action, unless it caused injury to the plaintiff or his wife; and if it was the immediate consequence of her own breach of contract, and would not have happened without it, it would be difficult, upon principles which regulate the construction of contracts, to say that the defendants must answer for the damage, because of their previous breach of contract, although that breach had produced no injury.

But injuries received in cases of this description are not violations of a contract between the parties, but are breaches of the duty imposed by law upon the carrier; they are torts. The plaintiff might, without doubt, have sued in assumpsit; but there are many cases where the law implies a contract, where there was, in fact, no agreement between the parties; this is done in order to give the plaintiff a more convenient remedy for his right, by enabling him to sue in assumpsit. And there are cases where an individual who has sustained an injury from the breach of a legal duty, may waive the tort and sue as upon a contract; this is the case with innkeepers and their guests, where property entrusted to the care of the innkeeper has been lost by his breach of duty; yet the obligations of innkeepers in that respect are prescribed by law, and their neglect is not a violation of contract, but a breach of the duty which the law imposes, and it is always so described in the ancient writs. Calye's Case, 8 Coke, 32; Fitzh. Nat. Brev. 94; Reg. Brev. "Trespass," 105. And if the relation in which the carrier and passenger stand to one another—to wit, that of bailor and bailee—can be said to be created by contract, yet, as soon as that relation subsists, the law interposes and prescribes the rights and duties, and liabilities of both parties; it regulates the degree of skill and care with which the passenger is to be carried, and any negligence on the part of the carrier, is an unlawful act, is a breach of legal duty. Story, Bailm. § 601. Indeed, even the relation of bailor and bailee is not created by contract; for those who undertake the business of carrying persons are regarded by law as if they were in the public service, and the carrier cannot refuse to take any one of good character who conducts himself properly and pays the usual fare (provided he has room for him), and if he refuses, he is liable to an action; so that the passenger takes his seat upon paying the usual fare, not by force of a right acquired by contract with the carrier, but in the exercise of a right secured to him by law; a right which the carrier cannot resist without committing a breach of a legal duty. In some instances, as in the case of railroads, even the amount of fare is prescribed by law, and the carrier is bound to take the passenger that offers it, if he has accommodation for him; and cases can hardly be said to be cases of contract, in which one of the parties has no option, and is compelled by law to carry the passenger, if the passenger requires it. Neglect of duty, therefore, on the part of a carrier of persons, is a tort; and if an individual is injured by it, his rights and the liability of the defendants must depend upon the principles which govern in cases of tort, where a breach of a legal duty has been committed and an individual suffers from it.

Considering the case before us in this point of view, it is certainly well settled by the

cases referred to by the defendants, that although a man commits an unlawful act by digging a ditch, or placing any other obstruction in a public highway, or by driving at a dangerous speed through a crowded street, and an individual is injured by it, the injured party cannot maintain an action, if it appears that he heedlessly and negligently came within the reach of danger, and did not use reasonable care to avoid it. In these cases, however, the unlawful act of the defendant was not the immediate and proximate cause of the injury; the cases all turn upon the fact that the plaintiff brought the danger immediately upon himself, and placed himself within its grasp, by his own want of reasonable care, and that if he had exercised ordinary caution it would not have reached him; as the immediate cause of the injury, therefore, was his own negligence, and not the negligence of the defendant, he cannot recover.

But the case before us is a very different one; the misconduct of the driver placed the plaintiff and his wife in immediate peril; for, according to the hypothesis of fact assumed and conceded, so far as concerns this point, the carriage was in danger of upsetting every moment; the driver, from intoxication, had become incapable of managing his horses, and they had left the road and were turning the carriage in an opposite direction to that in which they were before going. If the jury find these to be the facts in the case, then the negligence of the driver had placed every passenger in immediate danger; the peril which his negligence occasioned did not find them in a place of safety, from which they carelessly and improvidently rushed into danger, but the peril was brought upon them without any fault or want of care on their side, and it was impossible, at that moment, to foresee whether it would be safer to remain in the carriage or to spring from it; they had nothing left to them but a choice of perils, and one of them must be encountered. Now, if a man unlawfully places another in a situation which compels him to undergo one of two hazards, and forces him to choose, upon the instant, between them, he necessarily gives him the right of selection, and must be responsible for the consequences, although it may turn out that the most fortunate alternative was not adopted. There was, unquestionably, imminent danger in this case either way; sometimes, those who spring from the coach escape without injury, while the passengers who remain in it suffer severely; at other times, the result is different, and it proved to be so on this occasion; but this could not be foreseen at the moment, and the injury suffered by the plaintiff's wife was the immediate consequence of one of the two perils which the negligence of the defendants placed before her, and between which they compelled her to choose. If, therefore, the facts assumed on this point are found by the jury

to be true, the defendants are responsible for the injury she sustained.

The last point made in the argument may be disposed of in a few words. It is very clear, that if the driver, without any fault on his part, or on that of the defendants, was so overcome by the extreme and unusual coldness of the weather, that he was unable to manage his horses, and perform his duty as driver, then the plaintiff is not entitled to recover; if there was no negligence, there can be no cause of action. The only doubt we feel on this part of the case is, whether there is evidence enough to authorize the defendants to ask for this instruction; but if there is the slightest evidence, conducing to prove the fact, the question must be left to the jury; and even if there be some doubt whether there is any competent and legal evidence of the fact, the court would be unwilling to withdraw the question altogether from the jury, because it is to that tribunal that the law commits the decision upon controverted facts, and the court have no right to suppose that the jury would find a verdict upon slight and insufficient testimony, or without any testimony to warrant it.

Upon the whole case, therefore, as presented by the prayers made to the court, we give the following instructions to the jury:—

1. The defendants are not liable to this action, unless the jury find that the injury of which the plaintiff complains, was occasioned by the negligence, or want of proper skill and care in the driver of the carriage, in which she was a passenger; but the fact that the carriage was upset, and the plaintiff's wife injured, is prima facie evidence that there was carelessness or want of skill on the part of the driver, and throws upon the defendants, the burden of proving that the accident was not occasioned by his fault.

2. It being admitted that the carriage was upset, and the plaintiff's wife injured, it is incumbent on the defendants to prove that the driver was a person of competent skill, of good habits, and in every respect qualified and suitably prepared for the business in which he was engaged; and that he acted on this occasion, with reasonable skill, and the utmost caution and prudence; and if the disaster in question was occasioned by the least negligence, or want of skill or prudence on his part, then the defendants are liable to this action.

3. If the jury find from the evidence, that there was no want of skill or care, or caution on the part of the driver, and that the coach was upset by the act of the plaintiff, or his wife, in rashly and imprudently springing from it, then the defendants are not liable to this action. But if the want of skill or care in the driver placed the passengers in a state of peril, and they, at that time, had reasonable ground for supposing that the stage would upset, or that the driver was incapable of managing his horses, then the plaintiff is entitled to recover, although the

jury may believe, that from the position in which the negligence of the driver had placed the carriage, the attempt of the plaintiff, or his wife, to escape, may have increased the peril, or even caused the carriage to upset; and although the jury may also find that the plaintiff and his wife would probably have sustained little or no injury, if they had remained in the stage.

4. If the driver was a person of competent skill, of good habits, and in every respect qualified, and suitably prepared for the business in which he was engaged, and the accident was occasioned by no fault, or want of skill or care on his part, or that of the defendants, but by physical disability in the driver, produced by exposure to extreme and unusual cold, which rendered him for the time incapable of doing his duty, then the defendants are not liable to this action.

Affirmed by the supreme court in [Stokes v. Saltonstall] 13 Pet. [38 U. S.] 181.